UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KENNETH SACCO MCADAMS, | Case No.: 6:16-mj-00063-MJS-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>**(ECF No. 10)** |

This matter comes before the Court on Defendant's motion to suppress all evidence seized in the course of a stop and seizure of Defendant in Yosemite National Park on July 23, 2016. For the reasons stated below, the motion will be denied.

**I.   Procedural Background**

Defendant is charged with three counts in a criminal complaint filed against him in this Court on August 17, 2016. Count 1 alleges that Defendant was driving a vehicle under the influence of alcohol in violation of 36 Code of Federal Regulations ("CFR") Section 4.23(a)(1). Count 2 alleges that Defendant's alcohol level at the time exceeded the 0.80 grams presumptive level set forth in 36 CFR Section 4.23(a)(2). Count 3 alleges a failure to comply with the directions of a traffic control device in violation of 36 CFR Section 4.12.

1

Defendant was arraigned on August 30, 2016. The Federal Defender was appointed to represent him, and he pled not guilty to all charges. A status conference was set for November 1, 2016, but later continued to December 6, 2016.

On November 30, 2016, the Court accepted and approved a Stipulation by the parties to set a schedule for filing, briefing, and hearing Defendant's proposed motion to suppress. The motion was filed December 2, 2016, opposed by the United States on January 5, 2017, and ultimately set for an evidentiary hearing on January 31, 2017.

At the January 31, 2017 hearing, testimony was taken from the two Law Enforcement Rangers involved at various times in the stop and arrest of Defendant. Defendant was not present or otherwise available for examination. However, he sought to introduce his sworn written declaration, filed on the docket as ECF No. 11. The Court ordered further briefing on the issues of whether and to what extent Defendant's declaration should be admitted and considered by the Court and whether there was reasonable suspicion to stop a driver who had ceased a perceived law violation before being stopped by law enforcement.

Defendant submitted his Supplemental Memorandum of Points and Authorities on these issues on February 14, 2017. The United States reply was filed February 28, 2017.

The matter is deemed submitted.

**II.    Relevant Facts**

   **A.    The Scene**

The following facts are relevant and, for purposes of this motion, undisputed unless otherwise indicated:

At about 4:00 pm on Saturday, July 23, 2016, Defendant Kenneth McAdams was driving his vehicle, a blue Mercedes passenger vehicle with two female passengers, eastbound on Southside Drive between Sentinel Creek and the "Four Mile Trail" in Yosemite Valley, Yosemite National Park.

At that time and place, the said Southside Drive was a one-way street limited to eastbound traffic. It had two marked eastbound lanes. However, the Park Service had a

policy, in effect that day, to maintain one lane exclusively for busses and emergency vehicles when visitation was high and traffic dense. Thus, at this time and place only the left lane was open to visitor passenger vehicles and the right lane was signed as a bus lane only. There is no dispute at this point that, as the Law Enforcement Rangers testified at the suppression hearing, the prohibition against passenger traffic traveling in the right lane was clear and well-marked in at least three locations an eastbound driver would have to pass before getting to the point at which Defendant was stopped by law enforcement.

At the time of this incident, traffic in the left lane was "stop and go," backed up some distance to the west, and traveling at an estimated five to ten miles per hour. The right, bus, lane was relatively open and could accommodate travel at a rate of about 30 to 40 miles per hour.

Rangers Jason Montoya and Jesse McGahey were on bicycle patrol at the time. Both were traveling against traffic, westbound in the right, bus, lane, primarily to ensure compliance with the closure of that lane to passenger cars. McGahey was an estimated ¼ to ½ mile ahead, further west, of Montoya.

**B.    Law Enforcement Reason for the Stop**

Ranger Montoya testified that as he traveled west in the bus lane, he saw a blue Mercedes passenger vehicle traveling toward him down a straightaway and in the restricted bus lane (the right lane from the passenger car's perspective). Ranger Montoya does not recall if he motioned the blue Mercedes back into its left lane or if the Mercedes responded to seeing him, but it did then pull back into the proper, left, lane. Ranger Montoya waited and as the blue Mercedes ("definitely the same vehicle") came to his location an estimated 30 to 60 seconds later, he motioned it into the right lane and initiated a traffic stop because of the driver's failure to observe the lane control restrictions.

Ranger Montoya testified that he did not stop every such violator, but given what he considered to be the likelihood that this driver had already passed Ranger McGahey

and been made aware of the requirement to stay in the left lane, a stop and investigation was appropriate.

(As it turns out, Ranger McGahey had in fact encountered the same blue Mercedes in the restricted lane and waived it back into the proper lane before Ranger Montoya saw the vehicle.[1] McGahey is confident Defendant's vehicle was the same he had waved over earlier because when he joined Montoya a minute or two after the stop to assist him, he saw the car and its right front passenger who he earlier had observed had distinct pink hair. However, since the two rangers were not within eyesight of one another, Montoya did not know for sure that McGahey had had contact with Defendant. McGahey's actual encounter with Defendant has no bearing on the legitimacy of Montoya's decision to stop Defendant.)

**C.    Defendant's Version**

As noted, Defendant has proffered a written statement, signed under penalty of perjury stating in its entirety:

> On July 23, 2016, at approximately 1606 hours while traveling through Yosemite National Park, prior to being pulled over by a Yosemite Ranger I [Kenneth McAdams] was not traveling in the lane assigned for bus travelers.[2]

(Aff. of K. McAdams (ECF No. 11)).[3]

---

[1] McGahey's written report stated that he saw Defendant traveling improperly in the left lane which was restricted to bus traffic and so he waived him over to the proper right lane. At the suppression hearing he testified that the report reflected a simple error, i.e., he reversed the lanes without realizing it. He filed an addendum to correct that error. He testified that there is no question but that he meant that Defendant was in the right, bus, lane and he waved him into the proper left lane. He added that the bus lane has always been the right lane.

[2] The government objected to the admissibility of the statement given that Defendant was not present and not subject to cross-examination on its contents. The Court requested and received briefing on the point from both parties. The Government's brief effectively acknowledges the admissibility of such a hearsay statement at a suppression hearing. The Court finds it is admissible. See United States v. Raddatz, 447 U.S. 667, 679 (1980). The Court also agrees that the judge presiding over the hearing is to determine the weight to be given such statements and, since it is not subject to cross-examination, may and arguably should give it less weight than the testimony of witnesses who are present and subject to examination under oath. United States v. Torres, 504 F. Supp. 864, 867 (E.D. Cal. 1980), aff'd. 659 F. 2d 1012 (9th Cir. 1981).

[3] On further prodding by the Court, Defense counsel represented that Defendant's affidavit was meant to convey that at no point prior to being pulled over was Defendant traveling in the bus lane. The Court accepts this representation in issuing its ruling, despite the fact a more literal reading of the affidavit

4

**D.    The Stop**

Ranger Montoya stated he walked up to the driver's side door of Defendant's vehicle and asked Defendant, "Why were you in the bus lane?" According to Montoya, Defendant responded, "It is the passing lane."

At this point, Montoya's body camera was activated and it begins recording with the front right passenger saying something to the effect of "other cars were there too."[4]

Montoya reports observing that Defendant had bloodshot watery eyes, slurred speech, and an odor of alcohol about him. In addition, while running a check on Defendant's driver's license, Montoya was advised by law enforcement dispatch radio that Defendant and his car and its passengers fit the description of someone reported to have been seen in a seemingly intoxicated state entering the car and driving away from the Wawona Hotel some distance south of where Montoya stopped Defendant. Montoya's investigation continued with field sobriety tests, the results of which led to Defendant's arrest and the criminal charges now pending against him.

**III.    Defendant's Suppression Motion**

Defendant argues that Ranger Montoya had no constitutionally valid basis for stopping Defendant's vehicle and, therefore, that all evidence taken in the course of or as a result of that stop must be suppressed.

Defendant does not challenge the constitutionality of what occurred after the vehicle was stopped.

His argument rests on his sworn written statement, discussed above.

---

suggests a more disingenuous intent, to wit, that in the moments immediately preceding the traffic stop Defendant was not traveling in the bus lane—a fact that is not in dispute.

[4] Defendant objected to the admission and consideration of this statement as hearsay. However, as Defendant himself notes in connection with another issue, the court may consider hearsay and other evidence inadmissible at trial in ruling on a suppression motion. See Fed. R. Evid. 104(a) and Raddatz, 447 U.S. at 679. The spontaneity of this utterance also militates in favor of it being given reasonable weight here. See Fed. R. Evid. 803(1) and (2). The Court overrules the objection.

5

### A. Applicable Law

The parties' briefs set forth applicable law over which there appears to be no real dispute: as this was a warrantless investigatory stop and search of Defendant and his vehicle, in order to justify it, Ranger Montoya had to have had a reasonable belief that an offense had been or was being committed. Carroll v. United States, 267 U.S. 132, 162 (1925); see also Terry v. Ohio, 392 U.S. 1 (1968); Brineger v. United States, 338 U.S. 160 (1949). An officer can make a brief investigatory stop of a moving vehicle if, under the totality of the circumstances, he or she is aware of specific and articulable facts which, together with reasonable inferences from those facts, lead to a reasonable suspicion of criminal activity on the part of the defendant. Id.  United States v. Fouche, 776 F.2d 1398, 1402 (9th Cir. 1985).  Reasonable suspicion that a traffic infraction has occurred is sufficient grounds for a traffic stop. Berkemer v. McCarty, 468 U.S. 420, 439 (1984).  A stop with even minimal objective justification can be reasonable if based on more than an "inchoate or unparticularized suspicion." Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000).  A law enforcement officer's personal observation of a traffic violation is sufficient to justify a traffic stop. Whren v United States, 517 U.S. 806, 810 (1996); United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006).

At the suppression hearing, the question arose as to whether Defendant's returning to the proper lane before the stop as claimed by Ranger Montoya may have vitiated the reasonableness of stopping him for allegedly having been in the bus line previously. The parties were given the opportunity to brief that issue. Defendant identified no authority for such a proposition, instead focusing on the agreed "totality of the circumstances" reasonableness test.  The Court agrees and will base its decision on the motion on the totality of the circumstances as shown by the evidence. (As an aside, United States v. Willis, 431 F.3d 709, 715-16 (9th Cir 2005), authorizes the pursuit and detention of an individual seen to be violating traffic laws even after he had ceased driving.)

6

On a motion to suppress, it is the Government's burden to come forward with evidence of specific and articulable facts to show that the officer's action in stopping Defendant without a warrant was justified by reasonable suspicion a crime had been or was then being committed; once the government produces such evidence, the burden shifts to the Defendant to discredit the officers or present evidence contrary to their testimony. Willis, 431 F.3d at 715, n. 5.

**B.     Analysis**

Here, as noted, the Government had the burden to present evidence of facts giving rise to a reasonable suspicion that Defendant had violated the law.

Ranger Montoya testified under penalty of perjury, and in the face of cross-examination by defense counsel, that as he traveled west on Southside Drive in the lane marked in several places as for busses only, he saw a person, subsequently identified as Defendant, driving a blue Mercedes passenger vehicle toward him in the restricted right bus lane. The Mercedes did then pull back into the proper, left, lane.  As it came to Ranger Montoya's location, he motioned it into the right lane and initiated the traffic stop at issue here based on the driver's failure to comply with posted lane control restriction.

From the Court's perspective, that was a sufficient showing on the part of the Government to shift to Defendant the burden to discredit the officer or present evidence contrary to his testimony. The Court saw no basis for discrediting Ranger Montoya's testimony. He appeared to be quite consistent and credible throughout. He acknowledged that he did not stop every vehicle he found in the restricted lane, but did stop those (like Defendant) he felt had had ample opportunity to know that right lane driving was prohibited, given that Defendant would have had to have passed two or three postings to that effect as well as Ranger McGahey patrolling the right lane in front of Montoya.

Defendant did, however, present the above-referenced written statement in which he declared under penalty of perjury that in effect, he had not at any time on the day in question driven his vehicle in the right, restricted bus lane.

7

It thus falls upon the Court to evaluate the credibility of the conflicting reports.

Defendant was not available for observation while testifying or for cross-examination on his statement. There is no way to judge its credibility except by considering that it is stated to be made under penalty of perjury. On the other hand, it is, of course, perfectly self-serving. Furthermore, given the testimony as to the relative progress of traffic in each of the two lanes, Defendant could be suspected of having a motive for moving into the much faster bus lane and for now denying that he had done so.

Ranger Montoya, as noted, did appear, testify in person under observation by the Court and the Defense and respond to cross-examination. He appeared to the Court to be quite consistent and credible throughout. He acknowledged that he did not stop every vehicle he found in the restricted lane, but did stop those (like Defendant) he felt had had ample opportunity to know the right lane driving was prohibited since before he ever reached Montoya, he had to have passed two or three postings to that effect as well as Ranger McGahey patrolling the right lane. There was no suggestion of any possible motive for Montoya to single Defendant out and falsely accuse him of a traffic offense.

If the analysis ended there, the Court could not in good faith find that Defendant's statement was sufficient to overcome Montoya's testimony and meet the defense's burden. But it need not stop there. The Court also considers the statement attributed to Defendant impliedly justifying his presence in the right lane as it was the "passing lane."[5] Moreover, Defendant's passenger volunteered that "other cars were there too", again a justification for Defendant having been there and evidence that he had in fact been there.

Finally, we have Ranger McGahey's sworn, cross-examined testimony that he too had seen Defendant traveling in the bus lane before Defendant came within Montoya's

---

[5] Defense counsel's questioning impliedly challenged the veracity of this statement being made by Defendant by noting it was not on the video recording. Montoya testified he had not yet turned the recorder on. Defendant did not deny making the statement. He chose not to be questioned on its attribution to him. The Court accepts Montoya's sworn recollection as true.

view and had waived him back into the proper left lane. Such testimony provides an independent basis for such a charge against Defendant and some arguably admissible indicia of a habit or routine admissible under Federal rule of Evidence 406; more importantly, it impeaches Defendant's claim that he did not drive in the restricted lane that day.

It is difficult to imagine anyone adding up the facts and still crediting Defendant's written statement[6]; under the circumstances, the Court gives it minimal, if any, weight. Specifically, the Court finds that the Government has met its burden to show a reasonable basis for the stop. Defendant has not met his burden of refuting that basis. Defendant's motion to suppress will be denied.

**IV.   Order**

For the reasons stated above, Defendant's Motion to Suppress is hereby DENIED.

IT IS SO ORDERED.

Dated:   April 25, 2017                    /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE

---

[6] Indeed, given the absence of evidence corroborating Defendant's affidavit and the support for the rangers' testimony, the Court remains puzzled as to the perceived justification for bringing this motion to suppress.