# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>KENNETH MCADAMS,<br><br>Defendant-Appellant. | 1:18-cr-00149-LJO<br><br>ORDER ON APPEAL OF CONVICTION BY MAGISTRATE JUDGE<br><br>(ECF No. 75) |

## I. INTRODUCTION

After a bench trial before a United States Magistrate Judge on December 6, 2017, Defendant-Appellant Kenneth McAdams ("McAdams" or "Defendant") was found guilty of three counts for violating: 1) 36 C.F.R. § 4.23(a)(1), for operating a vehicle while under the influence of alcohol to a degree that renders the operator incapable of safe operation; 2) 36 C.F.R. § 4.23(a)(2), for operating a vehicle with a blood alcohol concentration of .08 grams or more per 210 liters of breath; and 3) 36 C.F.R. § 4.12 for failure to comply with the directions of a traffic control device in Yosemite National Park. ECF No. 51. On June 19, 2018, McAdams was sentenced to 12 months unsupervised probation, a fine of $1,480, and a First Time DUI Offender Program through the Nevada Department of Motor Vehicles. ECF Nos. 54-55.

McAdams appeals his convictions on three grounds, claiming the Magistrate Judge made a number of evidentiary errors in reaching the verdict. ECF No. 56; ECF No. 75 at 6. First, McAdams claims the Magistrate Judge erroneously permitted Ranger Montoya to provide expert

testimony on Horizontal Gaze Nystagmus ("HGN" or "nystagmus") without qualifying as an expert under Federal Rule of Evidence 702 and without being designated as an expert in pretrial discovery. *Id.* Second, McAdams argues that the Magistrate Judge inappropriately took judicial notice of the purported causal link between alcohol consumption and nystagmus. *Id.* Third, McAdams argues that the Magistrate Judge admitted into evidence the results of two improperly administered breath tests. Given these errors, McAdams requests that the Court vacate his conviction and enter a judgment of acquittal. *Id.* McAdams filed an opening brief on October 22, 2018. *Id.* The United States filed its answering brief on November 11, 2018. ECF No. 76. Appellant filed a reply on November 26, 2018. ECF No. 77. For the reasons that follow, the Court affirms McAdams' convictions.

## II. **BACKGROUND**

The trial occurred before the Magistrate Judge on December 6, 2017. ECF No. 33. At trial the government called four witnesses: Matt Thomas, Ranger Jesse McGahey, Ranger Jason Montoya, and Criminalist Jessica Winn. The Defendant called one witness, Criminalist Stanley Dorrance. ECF No. 51.[1]

Matt Thomas, a dining room and food and beverage manager at Wawona Hotel at the relevant time, testified at trial that he saw a party of three sitting on the veranda of the hotel drinking their own alcohol on July 23, 2016 at around 2:30 pm. As they were leaving the veranda walking towards the parking lot he noticed that the group was walking shoulder to shoulder and stumbling while walking and supporting each other. He followed them to make sure they did not drive and approached McAdams and asked if he was okay to drive, to which McAdams responded, "don't worry about us." Thomas observed that McAdams' eyes were drowsy and then watched McAdams get into the driver's seat of a vehicle as one of the two females also got

---

[1] The factual background here is recounted from the Magistrate Judge's Statement of Decision, which republishes verbatim the parties' jointly submitted post-trial summary of the trial testimony. ECF No. 51 at 2, n.1.

into driver's seat with him. Thomas further observed McAdams back up from the parking space and almost sideswipe the car parked next to him and honk at the parked car before heading north on Highway 41. Based on his observations, Thomas believed that McAdams was intoxicated, was concerned about him driving, and testified that if he was bartending he would have been concerned about continuing to serve him.[2] Thomas took down the make and model of car and asked one of the front desk clerks to call the Rangers to notify them. He provided a written statement to the Rangers later that day when they came to the hotel.

At around 4:00 pm Saturday July 23, 2016, McAdams was driving his vehicle with two female passengers eastbound on Southside Drive between Sentinel Creek and the "Four Mile Trail" in Yosemite Valley, Yosemite National Park. There were two marked eastbound lanes – at that time, the right lane was a bus only lane, open to buses, administrative traffic and emergency traffic, and the left lane was for visitor traffic. There were a number of signs in place to designate the right lane as the bus lane. Rangers Jason Montoya and Jesse McGahey were both on bicycle patrol at the time and traveling westbound against traffic in the right lane, primarily to ensure compliance with the closure of that lane to passenger cars. McGahey was an estimated ¼ to ½ mile ahead, further west, of Montoya. At around 4:00 pm on that day, the left lane for visitor traffic was moving at a stop and go pace and the right bus lane was free and clear of traffic and could move at 25-30 mph.

Ranger McGahey first observed McAdams as he was driving eastbound on Southside Drive while McGahey was facing west and maintaining the bus lane restriction. McAdams was traveling in the bus lane and McGahey indicated for the vehicle to move into the visitor lane and McAdams complied without incident. McGahey also testified that passenger cars are often in the bus lane in Yosemite and Park Rangers have a soft policy of issuing a warning for the initial

---

[2] Thomas, who worked in Yosemite National Park from 2010 to 2016, including as a server and bartender, had received training on how to identify people who may be too intoxicated to serve.

3

violation. McGahey saw McAdams' vehicle three to five minutes later after hearing on the radio that Ranger Montoya had performed a stop of a vehicle with the same vehicle description and he responded to Ranger Montoya's location at the scene of the DUI investigation. As McGahey approached from the passenger side of McAdams' stopped vehicle, he could see several empty beer cans in plain view in the front passenger seat. There was also an empty box of the same type of beer in the back seat. McGahey's original report said that McAdams had red eyes, was slurring his words, and was speaking very slowly despite the body camera footage showing McAdams speaking quickly.

Ranger Montoya testified that approximately 4:05 p.m. he observed a blue Mercedes in the bus lane of traffic approximately 15-20 car lengths away from him and coming towards his location. He then observed the vehicle move into the left visitor lane. When the vehicle got to where Ranger Montoya was he indicated for it to pull over. Ranger Montoya testified that he did not stop every such violator, but given what he considered to be the likelihood that this driver had already passed Ranger McGahey and been made aware of the requirement to stay in the left lane, a stop and investigation was appropriate. After stopping the vehicle, Ranger Montoya contacted the driver and got his identification and ran his plates through Yosemite dispatch. While running the check, Montoya was advised by law enforcement dispatch radio that Defendant and his car fit the description of someone reported to have been seen in a seemingly intoxicated state entering the vehicle and driving away from Wawona Hotel. During his stop of McAdams, Ranger Montoya observed a case of Modelo beer in the back seat, the smell of alcohol from the passenger compartment of the vehicle, that McAdams had sluggish, watery eyes, slurred speech, and gave inconsistent answers to his questions. After his contact with dispatch, Ranger Montoya asked McAdams to step out of the vehicle and conducted a DUI investigation, including three field sobriety tests – the HGN test, Walk and Turn test, and One

4

Leg Stand test. His observations led Ranger Montoya to the conclusion that McAdams was intoxicated. Ranger Montoya then requested McAdams take a preliminary breath test which confirmed the presence of alcohol. McAdams was arrested and transported to Yosemite Holding Facility where he was given a Drager Alcotest 7510 evidentiary breath test.[3] The initial attempt at the breath test did not provide a result because Defendant did not give enough breath volume. The first evidentiary breath test gave a reading of .13% blood alcohol content ("BAC") and the second, which was preceded by a two-minute waiting period under protocol, was .14% BAC.

Two experts testified at trial. Jessica Winn was qualified as the government's expert in the analysis of blood and breath samples for alcohol content. Stanley Dorrance testified for the defense and was qualified as an expert in the areas of forensic alcohol analysis, proper administration of chemical tests, and the administration and interpretation of field sobriety tests. The Court discusses their testimony as necessary to the relevant evidentiary objections below.

As a result of the events of July 23, 2016, the government filed a criminal complaint against McAdams charging three violations: 1) 36 C.F.R. § 4.23(a)(1), for operating a vehicle while under the influence of alcohol to a degree that renders the operator incapable of safe operation (count 1); 2) 36 C.F.R. § 4.23(a)(2), for operating a vehicle with a blood alcohol concentration of .08 grams or more per 210 liters of breath (count 2); and 3) 36 C.F.R. § 4.12 for failure to comply with the directions of a traffic control device, i.e. the bus lane restriction (count 3). ECF No. 2. McAdams entered a not guilty plea to all three counts on August 30, 2016. ECF No. 3. The trial court held an evidentiary hearing on January 31, 2017 on Defendant's motion to suppress which claimed that Ranger Montoya had no constitutionally valid basis for stopping Defendant's vehicle and therefore that all evidence taken in the course of and as a result of the stop must be suppressed. ECF No. 20. In a written decision on April 26, 2017, Defendant's

---

[3] The briefing and Magistrate Judge's opinion alternately spell this Drager or Dreager – the Court here refers to it as Drager throughout.

motion to suppress was denied. *Id.* After the December 6, 2017 trial, the Magistrate Judge issued a written Statement of Decision on April 16, 2018 finding McAdams guilty on all three counts. ECF No. 51. Judgment was entered on June 26, 2018 and McAdams filed a timely notice of appeal. ECF Nos. 55, 61. McAdams' sentence of 12 months unsupervised probation, a $1,480 fine, and a DUI offender program has been stayed until February 17, 2019 or the resolution of this appeal. ECF No. 74 at 3.

### **III. STANDARD OF REVIEW**

This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3402, which reads: "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court in which the offense was committed." The district court's review of the Magistrate Judge's judgment is governed by the same standard as an appeal from a judgment of district court to the court of appeals. Fed. R. Crim. P. 58(g)(2)(D); *United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007). Accordingly, conclusions of law are reviewed de novo and factual findings are reviewed for clear error. *See United States v. Vesikuru*, 314 F.3d 1116, 1119 (9th Cir. 2002); *United States v. Mancia*, 720 F. Supp. 2d 1173, 1178 (E.D. Cal. 2010) ("A district court reviews a magistrate's factual findings for clear error and legal conclusions de novo.").

The "abuse of discretion is the proper standard of review of a district court's evidentiary rulings" including decisions on whether to admit or exclude expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Volk v. United States*, 57 F. Supp. 2d 888, 892 (N.D. Cal. 1999) ("The question whether the magistrate judge properly admitted Officer West's testimony regarding the defendant's performance on the field tests is reviewed for abuse of discretion.") (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)). A trial court's decision to take judicial notice is also reviewed for abuse of discretion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). "Under this standard, an evidentiary ruling will be reversed only if such error 'more likely than not affected the verdict.'" *United States v. Decoud*, 456 F.3d 996, 1010 (9th Cir. 2006) (quoting *United States v. Pang,* 362 F.3d 1187, 1192 (9th Cir.2004)).

# IV. DISCUSSION

McAdams contends that the trial court made three evidentiary errors at trial. First, the trial court allowed Ranger Montoya to provide expert testimony regarding nystagmus without qualifying or designating him as an expert under Rule 702. Second, the trial court took judicial notice of a scientific conclusion – that there is a casual link between alcohol consumption and nystagmus – without affording McAdams an opportunity to be heard. Third, the trial court admitted into evidence two improperly administered breath tests. Given these errors, McAdams requests that this Court vacate his convictions and enter a judgment of acquittal. ECF No. 75 at 10.[4]

In response, the government argues that McAdams' convictions for drunk driving should be affirmed. ECF No. 76. The government submits that the Magistrate Judge carefully limited the testimony on HGN and that even if this evidence was erroneously admitted, the error was harmless. *Id.* at 7-10. With respect to admitting the breath alcohol tests the government submits that despite the lapses in the testing procedure, the Magistrate Judge followed Court of Appeal precedent in determining that these shortcomings went to the weight of the evidence rather the admissibility. *Id.* at 10-12.

The Court first addresses the admissibility of the breath tests before addressing the evidentiary objections concerning nystagmus.

### A. Admissibility of Breath Test Results

McAdams argues that the results from his two Drager Alcotest 7510 breath tests should have been excluded from evidence because the Rangers did not follow the standard procedural

---

[4] McAdams' appeal briefing presents no arguments for why his conviction under 36 C.F.R. §4.12, for his failure to comply with bus lane restriction, should be vacated and the Court does not otherwise address that conviction herein. At trial, the Magistrate Judge heard testimony on the HGN test and the breath tests despite the evidentiary objections and reserved ruling on the objections until he issued his statement of decision after allowing for and considering supplemental briefing on the issues. *See* ECF No. 51 at 33-45.

safeguards when collecting the breath samples. ECF No. 75 at 17-19. Specifically, McAdams contends that the failure to observe him during the *entire* 15-minute observation period vitiated the reliability of the test and rendered the breathalyzer unusable as a reliable scientific technique.[5] *Id.* McAdams contends that the Magistrate Judge abused his discretion in admitting the results of the improperly administered breath tests.

Both parties agree that the proper procedure for administering a breathalyzer test is to observe the subject for fifteen minutes before taking breath samples as a prerequisite for its accurate administration. ECF No. 51 at 40. The reason for the fifteen-minute observation period is to ensure that any potential mouth alcohol, which can skew the breathalyzer results, will have dissipated before breath samples are taken. If a person eats, drinks or chews there could be remnants of alcohol in the food or if there is still alcohol in the stomach and the subject regurgitates that could place alcohol into the mouth. Accordingly, the observation period ensures the reliability of the results of the breath test by ensuring any mouth alcohol has dissipated. *Id.* at 40-41. Ranger Montoya acknowledged that during the observation period he was doing paperwork, taking drinks of water and talking to other rangers in the booking room where the Alcotest was administered. *Id.* at 41. Based on the booking facility video and testimony, Ranger Montoya left the room twice during the observation period, once for 50 seconds while Ranger Wentz remained present and was fingerprinting Defendant during that time. Ranger Montoya stepped out a second time for 56 seconds and Ranger Wentz was with Defendant for all but 23 seconds of this latter period. *Id.* at 41.

The Magistrate Judge overruled the Defendant's objection to the admissibility of the breath test results due to the lapse in the observation period and in so ruling reasoned:

---

[5] McAdams does not otherwise question the reliability of the Drager Alcotest 7510 itself as a method of measuring BAC. ECF No. 51 at 40.

> There is no indication anywhere that Defendant at any time while in custody burped or vomited. At least one ranger was directly across from Defendant for all but about one and one half minutes of the observation period and Ranger Montoya was within hearing distance of him when he stepped into the hallway during one of the absences, and yet no one saw or heard the Defendant burp or vomit. Even if he had, the weight of the evidence is that there would have been no unabsorbed alcohol still in his stomach capable of being regurgitated into his mouth. There was no deviation in results [of the breath tests] as would have been produced had one of them been affected by mouth alcohol. It appears all other procedures for proper administration of the Alkotest [sic] and validation of its results were followed precisely."

ECF No. 51 at 44-45. In making these findings, the Magistrate Judge concluded that "failure of literal compliance with every detail of the protocol for administration of the Alcotest will be considered in determining how much weight should be given to the results of the test, but not foreclose consideration of those results. To hold otherwise would champion form over substance, particularly in a case like the present." ECF No. 51 at 44.

"[T]he Court must review the trial court's ruling [on admissibility of the breath test] for abuse of discretion." *Volk v. United States*, 57 F. Supp. 2d 888, 897 (N.D. Cal. 1999) (citing *United States v. Brannon,* 146 F.3d 1194, 1196-97 (9th Cir. 1998), *as amended* Sept. 21, 1998). The application of the abuse of discretion standard involves a determination of "whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (quoting *Anderson* v. *City of Bessemer City, N.C.,* 470 U.S. 564, 577 (1985)).

The Ninth Circuit has addressed the impact of failures of procedural safeguards in administering a breath test in *Brannon* and found that they do not require exclusion of the results. 146 F.3d at 1196-97. In *Brannon*, the defendant's breathalyzer result returned a reading of "deficient sample" where the defendant did not blow for long enough into the machine but initially blew a .15% for the first two seconds. *Id.* at 1196. The Ninth Circuit found that the district court did not abuse its discretion in admitting, over the defendant's objection that the partial test results lacked scientific reliability, the results of the incomplete breathalyzer. *Id.* at 1196-97. In so finding, the Ninth Circuit discussed:

9

> The best way of running a breathalyzer is to have a period of observation of the subject fifteen minutes before the test, to have blank tests preceding each of two actual tests, and to run a control test following the actual test. *Omission of these safeguards lowers the reliability of the tests, it does not eliminate them as scientific aids to a factfinder investigating drunkenness.*
>
> …
>
> Unusual events could also skew the test. If the defendant gargled alcohol just before it was administered, or burped alcohol into his mouth, the reading might be distorted. *If such events occur, they are part of the defense case; they do not shape the reliability of the method in detecting the alcohol present in the normal case.*

*Id.* at 1196. (emphasis added) (citations omitted). The *Brannon* court found that the result of the test was subject to challenge on cross examination and that the deficiency in procedural safeguards, despite a California statutory requirement that there be two complete tests for breathalyzer evidence to be admitted, did not require exclusion. *Id.*

The reasoning in *Brannon* is easily applicable here despite the procedural deficiency being different in kind. The facts here include McAdams being left unobserved for perhaps a minute and a half during the fifteen-minute observation period. Both experts testified that there was nothing to suggest the results of the Alcotest were less than accurate despite the lapse.[6] ECF No. 51 at 27-28, 30-32. Given the Ninth Circuit precedent in *Brannon* in conjunction with the facts of this case, this Court cannot conclude that the admission of the breath test results here was abuse of discretion. The Magistrate Judge's admission of the breath test results was not illogical, implausible, or without support from the inferences that may be drawn from the record. Procedural shortcomings in administering the test go to the weight of the evidence, rather than admissibility. *See United States v. Seong Ug Sin*, No. CR10-5332RBL, 2011 WL 13193271, at

---

[6] As discussed, the significance of the observation period is to ensure there is no mouth alcohol present from the subject burping or vomiting that would skew the test results. If a subject had burped, or mouth alcohol was otherwise present, the government's expert, Winn, stated that the reading on the Alcotest would have been significantly higher. ECF No. 51 at 27-28. Winn also testified given the amount of time that had passed since Defendant was in custody, an hour and a half, it was extremely unlikely that Defendant had any unabsorbed alcohol in his stomach that would have produced mouth alcohol even if he had burped during the very brief time he was left unobserved during the observation period. *Id.* at 27.

10

*1 (W.D. Wash. Dec. 20, 2011) ("Defendant's challenges to the way the test was administered (lack of a 15 minute observation period, failure to check the defendant's mouth for foreign objects, and performing three tests in a three minute period without a sufficient waiting period between tests) all go to the weight of the evidence and not its admissibility."), *aff'd*, 486 F. App'x 676 (9th Cir. 2012). Defendant here had a full opportunity to attack the breath test evidence and he did so on cross-examination of the government's expert witness and through the testimony of his own expert witness. The Magistrate Judge properly admitted the two test results, which indicated BACs of .13% and .14% in two separate samples.

### B. **Nystagmus Testimony and Judicial Notice**

McAdams takes issue with two aspects of the Magistrate Judge's decisions with respect to the nystagmus evidence.[7] First, he argues it was inappropriate to allow Ranger Montoya to testify on nystagmus, both because he was never designated as an expert by the government in pretrial discovery and because he was not qualified to testify on "a scientific hypothesis [of alcohol's effect on nystagmus] that is well beyond his training and knowledge." ECF No. 75 at 10. Second, the Magistrate Judge, in an apparent effort to render unnecessary the objection to a portion of Ranger Montoya's unqualified expert testimony, sua sponte took judicial notice of the causal link between alcohol consumption and nystagmus. ECF No. 75 at 14; ECF No. 51 at 39.

A court's decision to admit expert testimony as well as a decision to take judicial notice of a fact is reviewed for an abuse of discretion. *See United States v. Bonilla-Guizar*, 729 F.3d 1179, 1183 (9th Cir. 2013); *Lee*, 250 F.3d at 689. "If the district court improperly admitted the expert testimony, we apply harmless error review to determine whether its decision must be reversed." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014).; In

---

[7] Nystagmus refers to "an involuntary rapid movement of the eyeball, which may be horizontal, vertical, or rotatory. An inability of the eyes to maintain visual fixation as they are turned from side to side (in other words, jerking or bouncing) is known as horizontal gaze nystagmus, or HGN." *People v. Williams*, 3 Cal. App. 4th 1326, 1330 (1992) (citation omitted).

engaging in harmless error review, the Court asks "if erroneously admitting or excluding the evidence affected the outcome of the trial." *Id.* at 466. "Such decisions will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *United States v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000) (citation omitted); *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc) (citation omitted) (reversal is required "unless there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict").

The case law on the reliability and admissibility of testimony on HGN field sobriety testing is far from clear.[8] Rather than expend limited judicial resources to wade into the muddy waters and undertake an extensive analysis of which portions of Ranger Montoya's testimony may or may not have been appropriate under Federal Rule of Evidence 702, the Court assumes that it was error to admit the testimony of Ranger Montoya on HGN and that it was inappropriate to take judicial notice of the causal connection between alcohol consumption and nystagmus.[9]

---

[8] "HGN testing has been repeatedly challenged in court, with varying degrees of success, in this and other states, and accordingly its *courtroom* use cannot fairly be characterized as 'routine' or settled in law." *People v. Leahy*, 8 Cal. 4th 587, 606 (1994). As recently as 2018, a California state court certified the question of "whether the arresting police officer can testify as to the significance of a defendant's performance on [an HGN] test in intoxicated driving cases, or whether the prosecution needs to provide separate expert testimony on this issue" to the Court of Appeal indicating that "[t]here is currently some uncertainty in the law on this question" such that certification "would help to secure uniformity of decision." *People v. Randolph*, 28 Cal. App. 5th 602, 610 (2018) (finding that two CHP officers could qualify as expert witnesses on the investigation and determination of whether a suspect was under the influence of alcohol under the California Evidence Code, including in part the officers' findings from HGN testing as a basis for the opinion that the defendant was driving under the influence), *as modified on denial of reh'g* Nov. 14, 2018, *appeal filed* Dec. 3, 2018.

[9] McAdams' argues that the Magistrate Judge erroneously failed to apply Federal Rule of Evidence 702 to the HGN testimony. *See* ECF No. 75 at 11. The Court does not agree with this characterization of the Magistrate Judge's ruling. In *United States v. Nguyen*, the court specifically found that Rule 702 applies to HGN testimony. No. CRF06-0075 AWI, 2008 WL 540230, at *12 (E.D. Cal. Feb. 25, 2008) ("Because of the scientific foundation and specialized knowledge and training necessary to detect nystagmus, Rule 702 applies and any testimony about an HGN test and the results thereof must be reliable."). The Magistrate Judge here followed the *Nguyen* decision to apply Rule 702 to allow the limited officer testimony about Ranger Montoya's on-the-scene administration of the HGN test and the principle that alcohol is one cause of exaggerated nystagmus. ECF No. 51 at 36-38. The

The Court need not decide whether it was error to admit the nystagmus evidence, because even if it was an abuse of discretion for the trial court to admit the evidence, the error was harmless.

In reply to the government's argument that any error in admitting the HGN testimony was harmless, McAdams submits that the government's harmlessness argument is premised on the admissibility of the breath tests results: "[i]f the results of the breath tests are found inadmissible, the Magistrate Judge's decision regarding the HGN evidence is not harmless." ECF No. 77 at 6. McAdams further argues that even if the breath tests are admissible the Magistrate Judge's decision "undeniably relied in part on the results of the HGN test[,]" but does not offer any further elaboration or convincing arguments for why or how "the results of the field sobriety tests, *in particular the HGN test*, are necessary" for his conviction. *Id.* at 6-7 (emphasis added). The Court is unconvinced.

Even without considering the results from an HGN test, the Ninth Circuit has found officer testimony of unsatisfactory performance on several field sobriety tests (without further elaboration) along with only a partial two second breath test was sufficient to affirm a drunk

---

Magistrate Judge took into account Ranger Montoya's training and experience and found he was qualified to conduct HGN tests and testify on administering the HGN test. *Id.* at 37-38.

It seems that in order to dispense with the objection to Ranger Montoya's testimony on the causal link between alcohol consumption and nystagmus, the Magistrate Judge went one step further and judicially noticed the causal connection. ECF No. 51 at 39. With regard to the appropriateness of taking judicial notice of the causal connection between alcohol consumption and nystagmus, the Court cannot agree with the Magistrate Judge here that it was appropriate to do so. Judicial notice is appropriate for a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As the *Nguyen* Court noted, "the HGN test is based on a scientific principle that is *not commonly known*, i.e. that consumption of alcohol is a cause of exaggerated nystagmus." *Nguyen*, 2008 WL 540230, at *12 (emphasis added); *People v. Leahy*, 8 Cal. 4th 587, 607 (1994) ("Certain reactions to alcohol are so common that judicial notice will be taken of them; however, HGN testing does not fall into this category. . . . HGN test results are scientific evidence based on [a] scientific principle…") (internal quotation marks omitted). As noted by other district courts, "experts have very differing opinions about the reliability of the HGN test." *United States v. Van Hazel*, 468 F. Supp. 2d 792, 797 (E.D.N.C. 2006) (collecting authorities). The Court finds that taking judicial notice of the causal connection between alcohol consumption and nystagmus is not appropriate under Federal Rule of Evidence 201 as it is neither "generally known" nor is its accuracy incapable of "reasonably be[ing] questioned."

driving conviction. *Brannon*, 146 F.3d at 1196 (noting that "in the present case the [partial] breathalyzer result does not stand alone but coheres with the observations of the officers and with the belated excuses Brannon made to avoid completing the field sobriety tests and the breath test."). In *United States v. Van Griffin*, the Ninth Circuit noted that "[t]he nystagmus test was only one of several bases on which Ranger Oltrogge formed his opinion that Griffin was drunk. Oltrogge himself acknowledged that the test was far from being 100% reliable even when perfectly performed. *The other indicia of Griffin's state were more than sufficient to carry the conviction that he was under the influence of alcohol.*" 874 F.2d 634, 638 (9th Cir. 1989) (emphasis added) (affirming conviction where failure of magistrate judge to recuse himself despite possession of arresting officer's report constituted harmless error). HGN testing "is a component of a three-part field sobriety test which itself is only part of an officer's total observations of a suspect and is only one basis for an officer's opinion concerning intoxication." *Randolph*, 28 Cal. App. 5th at 611-12. The HGN test here was just one basis for the Ranger's opinion concerning intoxication.

Here, the Court has found that the results of the two breath tests were properly admitted into evidence. The Magistrate Judge considered the breath test results in conjunction with the other observations of the Rangers during the DUI investigation, including Defendant's sluggish, watery eyes, slurred speech, inconsistent answers, beer cans in the vehicle, minor failures on the walk and turn and one leg stand field sobriety tests and Thomas' testimony that he believed that McAdams was intoxicated when he left Wawona Hotel. Even without the HGN test, the evidence was "more than sufficient to carry the conviction that [McAdams] was under the influence of alcohol." *Van Griffin*, 874 F.2d at 638; *see Volk v. United States*, 57 F. Supp. 2d 888, 892 (N.D. Cal. 1999) (affirming conviction under 36 C.F.R. § 4.23(a)(1) and 36 C.F.R. § 4.23(a)(2) where results of nystagmus tests were not offered at trial but other field sobriety tests were administered and trial court held "that the evidence of the [breathalyzer] test results combined with Officer West's observations demonstrated beyond a reasonable doubt that he had committed the offenses"); *United States v. Daras*, 164 F.3d 626 (4th Cir. 1998) ("As for the HGN, we need not decide whether such tests are scientifically reliable, because the results of the

breathalyser, the remaining field sobriety tests, and Officer Grier's testimony were more than adequate to support Daras' conviction.") (unpublished opinion) (footnote omitted).

Accordingly, the Court finds that any error in admitting the nystagmus evidence was harmless. *See also United States v. Morales*, 720 F.3d 1194, 1203 (9th Cir. 2013) (holding that error regarding admissibility of government forms was harmless and did not substantially affect the verdict because "there was sufficient [independent] evidence to demonstrate that the individuals in question were aliens who had unlawfully entered the United States"). "In light of the overwhelming evidence of guilt, we can say with at least a 'fair assurance' that any error did not affect the verdict and was therefore harmless." *Bonilla-Guizar*, 729 F.3d at 1185 (quoting *Morales,* 108 F.3d at 1040). The Court finds the HGN evidence did not materially affect the outcome of the trial given that the other evidence of McAdams' guilt was sufficient to support his convictions. Therefore, any potential error was harmless.

## V. CONCLUSION AND ORDER

For the reasons set forth herein, McAdams' appeal is DENIED and his convictions under 36 C.F.R. § 4.23(a)(1), 36 C.F.R. §4.32(a)(2) and 36 C.F.R § 4.12. are AFFIRMED.

**IT IS SO ORDERED.**

Dated: **January 15, 2019**         /s/ Lawrence J. O'Neill
                                    UNITED STATES CHIEF DISTRICT JUDGE